IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re

MACADAM COMPUTER, INC.,

    Debtor

No. C 06-4889 SI

**ORDER AFFIRMING BANKRUPTCY COURT ORDER**

TOM SANTOS,

    Appellant,

  v.

JANINA M. ELDER, Trustee,

    Appellee.

    On July 19, 2006, a United States Bankruptcy Court approved a proposed settlement of state court claims between the Trustee for debtor MACadam Computer Inc. and Apple Computer, Inc. ("Apple"). Appellant Tom Santos appeals from this order. Having carefully considered the record and the papers submitted, the Court hereby AFFIRMS the Bankruptcy Court's July 19, 2006 order.

### BACKGROUND

    Appellant Tom Santos is the Chief Executive Officer and 90% shareholder of the debtor, MACadam Computer, Inc. ("MACadam" or "debtor"). MACadam was an Authorized Reseller of Apple Products and, until October 2003, operated a retail store which sold Apple products. In December 2004,

MACadam filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. AE0003.[1] The case was subsequently converted to Chapter 7 and appellee Janina M. Elder was appointed as Trustee of MACadam's bankruptcy estate. *Id.* Santos is a voluntarily subordinated creditor of the estate who can only receive a dividend after all other allowed claims are paid in full. AE0473.

In 2002, MACadam and Santos sued Apple in state court alleging unfair competition, antitrust, and tort claims after Apple opened its own retail stores. *See MACAdam Computer Inc., a California Corporation, and Tom Santos, an individual, v. Apple Computer Inc., et seq.*, Case No. CV813373 (Santa Clara Sup. Ct.). In response to a series of successful demurrers to the complaint, MACadam and Santos have amended the state court complaint a number of times. *See generally* AE0363-85 (state court orders on demurrers). MACadam has not filed a Fifth Amended Complaint due to a stipulated stay of proceedings pending the bankruptcy court proceedings.[2] AE0079. According to a declaration filed by appellant's counsel in the Bankruptcy Court, MACadam's proposed Fifth Amended Complaint would include approximately twenty claims for, *inter alia*, breach of contract, negligent misrepresentation, fraud, and violation of the Cartwright Act. AE0079; *see also* AE0261 (Fourth Amended Complaint).

According to a declaration filed by appellee in the Bankruptcy Court, after her appointment as Trustee, appellee obtained copies of the key pleadings in the state court action, and met on a number of occasions with appellant and attorneys for both sides in the state case. AE0012-14. Appellee's bankruptcy court declaration states that she decided to continue the prosecution of the state court action because "the only realizable asset which would be of any real benefit to creditors was the prosecution of the State Court Action." AE0013. Appellee "'shopped' the case to two plaintiff's firms with national reputations" and ultimately elected to hire Anthony Ferrigno as special counsel pursuant to Section 328 of the Bankruptcy Code. AE0013-14.[3]

---

[1] Appellant's Excerpts of Record are cited as "AE____".

[2] Appellant, who has sued on his own behalf, has filed a fifth amended complaint in the state court action. AE0079.

[3] Aron Oliner is the Trustee's general bankruptcy attorney and Anthony Ferrigno is the Trustee's special counsel. Mr. Ferrigno, J. David Franklin and a third attorney, Alexander Schack, represent other Apple resellers in litigation against Apple, and at some point Messrs. Ferrigno, Franklin and Schack represented MACadam and/or Santos in the state court action. AE077-80.

2

1  On January 9, 2006, after an all-day judicially-supervised mediation before the Honorable
2  Thomas E. Carlson, United States Bankruptcy Judge, the Trustee and Apple reached a settlement of the
3  state court claims. AE0017. The settlement, which was subject to Bankruptcy Court approval, called
4  for dismissal of the litigation between MACadam and Apple, payment to the bankruptcy estate of
5  $275,000 in cash, subordination of Apple's $130,000 unsecured claim,[4] waiver of Apple's $60,000
6  administration claim, and a substantial reduction in attorney's fees that would otherwise be paid to
7  debtor's Chapter 11 bankruptcy counsel and state court litigation counsel. AE0021-30 (settlement
8  agreement); AE0031-33 ("Notice of Trustee's Intention to Compromise Controversy with Apple
9  Computer; Opportunity for Hearing"); AE0840-53 (transcript of January 9, 2006 settlement conference).

10  On January 23, 2006, the proposed settlement was noticed to all creditors and interested parties
11  in the debtor's bankruptcy case. AE0031-41. Appellant was the only objector. AE0052. The largest
12  creditor, Ingram Micro Devices, Inc., filed a declaration in support of the proposed settlement. AE0256;
13  *see also* July 17, 2006 transcript at 44:18. Prior to the hearing on the motion to approve the settlement,
14  appellant's counsel took the depositions of the Trustee and the Trustee's general bankruptcy counsel,
15  Mr. Oliner. AE0543-0678.

16  On March 21, 2006, the Honorable Dennis Montali held a hearing on the Trustee's motion to
17  approve the proposed settlement. Judge Montali denied the motion without prejudice, finding that
18  appellee had not met her burden to show that the settlement was within the "range of reasonableness."
19  March 21, 2006 transcript at 69-72. Judge Montali was particularly concerned by the absence of a
20  declaration signed by the special counsel for the Trustee in the state court action opining as to the merits
21  of the settlement and underlying litigation.[5]

---

Appellee states that Apple filed a motion with the Bankruptcy Court to reconsider the court's appointment of Mr. Ferrigno as litigation counsel for the Estate as a result of his alleged failure to cease his representation of Mr. Santos in connection with Mr. Santos' asserted personal claims against Apple, and Mr. Ferrigno's alleged misrepresentations to the Bankruptcy Court with respect thereto.

[4] Apple is also a creditor of the MACadam.

[5] Appellee states that "the absence of such a declaration from Mr. Ferrigno . . . was understandable because Mr. Ferrigno (and Mr. Santos' counsel on this appeal, Mr. Franklin) represents other Apple resellers in litigation against Apple [and] [s]ince Mr. Ferrigno and Mr. Franklin have both described the other cases as "substantially identical" to the Debtor's case, providing a declaration stating

3

The Trustee elected to seek an opinion on the reasonableness of the settlement and merits of the state court litigation from a disinterested attorney. The Trustee applied to the Bankruptcy Court for the authority to retain attorney Mark Lonergan as special counsel to the Trustee for the "limited purpose of evaluating the State Court Action and providing an analysis of the merits of the Trustee's case, including the probability of the Trustee prevailing in the State Court Action and likely range of recovery if the Trustee does prevail." AE0859. The application was accompanied by a declaration from Mr. Lonergan setting forth his credentials. AE0863-69. Appellant did not object to Mr. Lonergan's appointment, and the Bankruptcy Court granted the Trustee's application to retain Mr. Lonergan.

In a declaration filed with the Bankruptcy Court in support of the Trustee's application to approve the compromise, Mr. Lonergan set forth the steps he took in undertaking his investigation. Mr. Lonergan stated that he obtained the Fifth Amended Complaint which the Trustee proposed to file in the state court action, and that he did the following:

> After reviewing the proposed Fifth Amended Complaint, I first contacted Anthony Ferrigno, who represents the Trustee in the State Court Action. Mr. Ferrigno and I had a lengthy conversation concerning the claims at issue in the State Court Action, the evidence which supports those claims, and the law applicable to those claims. I then had a conference call with Gregory Lindstrom and Christopher Yates, two of the attorneys representing Apple; in order to gain an understanding of the State Court Action (including both the facts and relevant law) from Apple's perspective.
>
> Following my initial conversations with Mr. Ferrigno and Apple's attorneys, I received extensive documentation from both parties. The documents which I received and reviewed included the (operative) Fourth Amended Complaint; the various agreements between Apple and MACadam Computer, Inc. ("MACadam"); Apple's Ethics Policy; a lengthy PowerPoint presentation of what I understood to be the critical documents which MACadam and its principal Thomas Santos had put together in order to "make its case" against Apple; numerous emails and internal Apple documents which MACadam believes supports its case against Apple; sales figures and other documents relating to the financial performance of MACadam and other Apple resellers/specialists; and tax returns for MACadam.
>
> After reviewing these documents, I had another lengthy conference call with Mr. Ferrigno. At Mr. Ferrigno's request, Mr. Santos participated in this call as well. We discussed, in detail, the documents supporting MACadam's claims, and the law and facts relevant to those claims. Following this call, I then had another follow-up conference call with Mr. Yates to obtain additional input from Apple, and to obtain Apple's response to certain claims and issues which were raised in my previous conference calls with Messrs. Ferrigno and Santos.

---

the weaknesses of the Debtor's case would likely violate fiduciary duties to the other plaintiffs." Appellee's Opening Brief at 6:5-10.

4

> Finally, toward the conclusion of my investigatory phase, I contacted Mr. Oliner and requested that he provide me certain pleadings and documents related to the proposed compromise – specifically, the pleadings and exhibits filed by the Trustee and objecting party Thomas Santos in connection with the underlying motion which was previously heard in March. I reviewed these pleadings in order to understand the terms of the proposed settlement and measure it against my now well-developed understanding of the State Court Action.

AE0422-24.

Mr. Lonergan concluded that the proposed settlement agreement was within the range of reasonableness with respect to the amount of the recovery by the Trustee. AE0424.

> It is my conclusion that there are numerous factual and legal defenses which the Trustee would have to overcome in order to recover from Apple, and there is a not insignificant possibility that Apple could prevail in the State Court Action. My conclusion in this regard is based primarily upon (1) certain provisions found in MACadam's contracts with Apple; (2) Apple's contractual right to terminate its relationship with MACadam, without cause, on 30 days' notice; (3) the actual circumstances of Apple's termination of MACadam as a reseller/specialist; and (4) various difficulties which exist with respect to proof of reliance and certain other elements essential for recovery by MACadam. In the event that the Trustee were to prevail in the State Court Action, it is my opinion that the damages recoverable from Apple would be limited, based upon contractual limitations on MACadam's recovery which the parties agreed to, MACadam's past performance as a reseller/specialist, and limitations imposed by California law with respect to the recovery of damages. While it is possible that the Trustee could recover damages in excess of the relief provided under the Proposed Settlement, I believe that is unlikely. It is more likely, in my opinion, that the Trustee would recover an amount less than that provided under the Proposed Settlement, or nothing at all from Apple.

AE0424.

On or about June 2, 2006, the Trustee filed her Supplemental Motion for Entry of Order Authorizing Trustee to Compromise Controversy with Apple Computer, Inc. AE0415. Appellant was granted a continuance in order to depose two of Apple's attorneys involved in the state court litigation, appellant's former attorney in the state court action, and Mr. Lonergan. AE0870-74 (request for continuance); AE1080-1303 (deposition transcripts). The parties submitted extensive briefing and declarations regarding the motion.

The hearing on the Trustee's motion was held on July 17, 2006. At the hearing, appellant's counsel stated that "[t]he word on the street" was that one of the other Apple reseller cases had been settled confidentially for $3 million. *See* July 17, 2006 transcript at 9:10-23. Appellant's counsel stated that the settled case was "identical" to the MACadam case, and that the plaintiff in that case, Computer International, was approximately one-third the size of MACadam. *Id.* Appellant requested a further

5

continuance to discover the details of the Computer International settlement. Both Apple and the Trustee objected that there was nothing in the record to substantiate appellant's assertions about this confidential settlement. Appellant's counsel admitted that he "had known about the settlement for some period of time." *Id*. at 23:1-2.[6] Judge Montali denied appellant's request for a further continuance, and after extensive argument by both parties, Judge Montali ruled that the Trustee had carried her burden to show the reasonableness of the settlement, and approved the proposed settlement. *Id*. at 53-60.

**STANDARD OF REVIEW**

"[T]he bankruptcy court's order approving the trustee's application to compromise the controversy is reviewed for an abuse of discretion." *In re A&C Properties*, 784 F.2d 1377, 1380 (9th Cir. 1986). Reversal for abuse of discretion is not appropriate unless the Court has a "definite and firm conviction" that the court below "committed a clear error of judgment." *Marchand v. Mercy Medical Center*, 22 F.3d 933, 936 (9th Cir. 1994). If the bankruptcy court "amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *In re A&C Properties*, 784 F.2d at 1381.

**DISCUSSION**

In deciding whether to approve a compromise agreement, the Bankruptcy Court must consider whether there has been a good faith negotiation of a settlement by the trustee, and whether the compromise is "fair and equitable." *Id*. The Ninth Circuit has instructed,

> In determining the fairness, reasonableness, and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in collection; (c) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*Id*.

---

[6] Apple's lawyer, who was not involved in the Computer International settlement, informed Judge Montali that "if there is a confidential settlement, it's nothing like three million. That's all I know about it, but that figure is a figment of somebody's Monday-morning twelfth-hour imagination. It's nothing that anybody has agreed to." *Id*. at 40:18-22.

Here, the record shows that the bankruptcy court considered each of these factors, and that the court conducted a careful and comprehensive review. *See* July 17 transcript at 53-60. The court noted that Mr. Lonergan "brings credentials," and found that based upon the record before the court, including the opinion of Mr. Lonergan, the Trustee had met her burden to show the reasonableness of the compromise. *Id*. at 57. The court also found that because appellant was the only objector, presumably the other claimants were in favor of the compromise, and that this factor also weighed in favor of approving the settlement. *Id*. at 57. The Bankruptcy Court did not find any factors that weighed against approving the settlement.

Appellant raises a number of related arguments challenging the bankruptcy court's order approving the settlement. Appellant contends that Mr. Lonergan's declaration was conclusory and lacking factual support, and that Mr. Lonergan misunderstood MACadam's fraud claim. Appellant argues that because Mr. Lonergan's report was flawed, the bankruptcy court abused its discretion by relying on that declaration.

The record belies appellant's contentions. The Bankruptcy Court held two days of hearings on the Trustee's application for compromise, and initially denied the application without prejudice because the court found that the Trustee had not met her burden. The court granted appellant several continuances in order to fully develop the record on appellant's objections to the compromise. At the time the Bankruptcy Court approved the Trustee's compromise, the court had before it extensive briefing by both sides, including numerous declarations from individuals involved in the state court action, as well as the six deposition transcripts of the individuals deposed by appellant regarding the proposed compromise. Thus, the Bankruptcy Court had a sufficient factual foundation to assess the reasonableness of the compromise. Further, Mr. Lonergan's declaration was supplemented by his lengthy deposition transcript, and it is clear from the July 17, 2006 transcript that the Bankruptcy Court had read both the declaration and the deposition. *See* July 17, 2006 transcript at 28-29.

Similarly, the record shows that both Mr. Lonergan and the Bankruptcy Court spent a

considerable amount of time assessing MACadam's fraud claim,[7] but that Mr. Lonergan simply disagreed with appellant's assessment of the strength of that claim. *See* AE1252-54, AE1279-84, July 17 transcript at 27-28. Mr. Lonergan interviewed appellant, his counsel, and Apple's counsel regarding the fraud claim. AE1252-53. Mr. Lonergan also reviewed the operative Fourth Amended Complaint and the draft Fifth Amended Complaint from the state court action in order to ascertain the strength of that claim in particular. AE1279. Mr. Lonergan also requested that appellant's counsel send him "those documents that he deemed to be most relevant, most important, and most helpful in terms of supporting the [fraud] claims." AE1254.

Appellant also argues that the settlement was not reasonable because of the rumored $3 million Computer International settlement. Appellant relatedly argues that the Bankruptcy Court abused its discretion by not granting a further continuance to allow appellant to obtain a copy of that settlement agreement. Appellant also asserts that the Bankruptcy Court abused its discretion by not ordering Apple to reveal the terms of that supposedly confidential settlement.

The Court finds these arguments lack merit. The Bankruptcy Court was not required to consider a "rumored" settlement – of which there was no evidence in the record – in determining the reasonableness of the compromise. Nor did the Bankruptcy Court abuse its discretion by denying appellant's request for a continuance. Despite being given several continuances and the opportunity to extensively brief the Trustee's application to approve the compromise, appellant only first informed the Bankruptcy Court of the rumored settlement on the day of the hearing. Appellant's counsel acknowledged that he had been aware of the settlement for some time, and did not provide any satisfactory explanation as to why he had failed to raise the issue earlier. Finally, as the Bankruptcy Court noted at the hearing, that court had no authority to compel Apple to disclose the terms of a private confidential settlement.

Appellant also argues that the settlement was unreasonable because the Trustee was certain to

---

[7] During a colloquy with appellant's counsel during which counsel articulated the fraud claim, the Judge Montali stated his belief that Mr. Lonergan "zeroe[d] in on" MACadam's fraud theory. *Id*. In addition, the Bankruptcy Court commented that although appellant believed that Mr. Lonergan had been confused about the fraud claim, "there's been a sort of changing theory of the case" as a result of Apple's successful demurrers and MACadam's repeated amendments to the state court complaint *Id*.

8

prevail in the state court action because other Apple resellers were suing Apple, and because Apple allegedly wanted to reach a global settlement of all the cases. However, the record shows that the Bankruptcy Court considered these arguments, and found that while "there may be global settlement efforts going on in the future" that could theoretically affect the reasonableness of the Trustee's settlement, the effect of settlement negotiations in the other cases was also speculative because "these settlements are moving targets." July 17, 2006 transcript at 58-59. The Bankruptcy Court also noted that seven months had passed since the Trustee and Apple had reached their settlement, and that the court needed to assess the reasonableness of the settlement based upon the record before the court at that time. *Id*. The Court finds no error in the Bankruptcy Court's decision in this regard.

Appellant also contends that the settlement was unreasonable because Apple had allegedly previously made a settlement offer of $2 million. However, the record does not show that Apple ever made a $2 million offer to MACadam. Instead, the record demonstrates that the parties engaged in settlement discussions and that, as part of those discussions, the parties explored the possibility of Apple providing MACadam with certain software and products. AE0069, 1080, 1128-29, 1206, 1214-19. The $2 million "offer" appears to be a settlement proposal made by *appellant* to Apple, which Apple rejected. AE0069-76 (appellant's "wish list" of Apple products sent to Apple during settlement negotiations), AE1080. The Bankruptcy Court did not abuse its discretion by disregarding this alleged settlement offer in finding that the settlement was reasonable.[8]

Finally, appellant accuses the Trustee and her counsel of "deceptive conduct." Many of appellant's arguments in this regard simply repeat appellant's challenges to the Bankruptcy Court's order approving the compromise; for example, appellant contends that the Trustee and her counsel devalued MACadam's fraud claim, and that they ignored Apple's $2 million "settlement offer." For

---

[8] Citing the Trustee's deposition testimony, appellant also asserts that the Trustee "came to the conclusion that the MACadam case against Apple was worth $7,500,000." Appellants' Opening Brief at 6:21. However, the Trustee actually testified that as part of her assessment regarding whether the compromise was reasonable, she estimated MACadam's damages as $7,500,000 as follows: "if MACadam was successful on all of its causes of action in the Fourth Amended Complaint, I relied upon the amount of damage[s] prayed for in the Fourth Amended Complaint." AE0166. Thus, the $7.5 million figure represented the extreme upper end of possible damages because it was based upon MACadam's own statement of its damages and assumed that MACadam would completely prevail at trial.

9

United States District Court
For the Northern District of California

the reasons stated *supra*, the Court finds that these contentions lack merit. Appellant also argues that the Trustee and her counsel did not engage in a good faith, arms-length negotiation with Apple because the Trustee and her counsel initially expressed their opinions that MACadam's case had merit. However, as the Bankruptcy Court noted, and as the record reflects, the Trustee and her counsel considered evidence and arguments from both MACadam and Apple, participated in a full-day judicially supervised mediation, and retained an independent third-party assessment from Mr. Lonergan. The fact that the Trustee came to a conclusion that differed from that of appellant is not a basis for finding that the Trustee did not act in good faith.

## CONCLUSION

For the foregoing reasons, the Court finds that the Bankruptcy Court did not abuse its discretion in approving the proposed settlement order. Accordingly, the Court AFFIRMS the bankruptcy court's order.

**IT IS SO ORDERED.**

Dated: June 28, 2007

SUSAN ILLSTON
United States District Judge